UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Brown Massaquoi

    v.                                                  Civil No. 18-cv-296-LM
                                                                      Opinion No. 2018 DNH 231

20 Maitland Street
Operations LLC et al.

**O R D E R**

Plaintiff Brown Massaquoi brings suit against his former employer 20 Maitland Street Operations LLC, d/b/a Harris Hill Center, ("Harris Hill") and its affiliate Genesis Healthcare LLC ("Genesis"), alleging race, color, and national origin discrimination and retaliation claims under both Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann. ("RSA") 354-A, (Count I) and a defamation claim (Count II). Massaquoi alleges that defendants discriminated against him while he was employed at Harris Hill and ultimately terminated him because he is a "Black, African American from Liberia." He also alleges that defendants subsequently defamed him and retaliated against him for filing a complaint about the alleged discrimination.

Before the court is defendants' motion to dismiss Count I to the extent it is based on claims of national origin discrimination and retaliation (doc. no. 16). Defendants'

motion rests on one argument: Massaquoi failed to exhaust his administrative remedies for those two claims because he did not report either in an Equal Employment Opportunity Commission ("EEOC") charge.[1]

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and determine whether the factual allegations in the complaint set forth a plausible claim upon which relief may be granted. Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108 (1st Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A "plaintiff who does not plausibly allege that she successfully exhausted administrative remedies cannot state a claim under Title VII . . . and her claims [are] therefore . . . subject to dismissal pursuant to

---

[1] The court notes that the structure of Massaquoi's complaint makes it difficult to discern what facts support each discrimination claim. Massaquoi describes all facts as common to all counts. All discrimination claims are then merged together into one count. See Fed. R. Civ. P. 10(b) (requiring that, for clarity's sake, a plaintiff state separate and distinct claims in separate counts).

2

Rule 12(b)(6)." Harris v. Bd. of Trs. Univ. of Ala., 846 F. Supp. 2d 1223, 1237 (N.D. Ala. 2012); see also Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 n.6 (1st Cir. 2005).

With their motion to dismiss, defendants submit a copy of Massaquoi's EEOC charge (doc. no. 16-2). When the moving party presents matters outside the pleadings to support a motion to dismiss, the court must either exclude those matters or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). An exception to Rule 12(d) exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (internal quotation marks and citations omitted). Because Massaquoi's EEOC charge is central to Massaqoui's claims and neither party disputes its authenticity, the court may consider it without converting the motion to one for summary judgment.

## BACKGROUND

The following facts are taken from Massaquoi's complaint (doc. no. 14) and, where specifically noted, his EEOC charge. Massaquoi is an African American from Liberia. He is a licensed

3

nursing assistant who began employment at Harris Hill on January 14, 2014. Massaquoi alleges that his supervisors at Harris Hill treated him differently than his white co-workers. Throughout his employment, they gave him more difficult work assignments, did not give him necessary assistance when he requested it, and failed to investigate complaints he brought to them. At some point, certain residents complained to one of Massaquoi's superiors, Linda Janowicz, that they "did not want African Americans or other minorities caring for them." Rather than address the racism, Janowicz accommodated the residents and advised Massaquoi that he should not enter their rooms.

In addition, Janowicz accused Massaquoi of abusing residents on five separate occasions. Company policy required an investigation into allegations of resident abuse, including a written statement from the accused employee and suspension of the employee for the duration of the investigation. After each of the first four accusations, Massaquoi was permitted to give a written statement and, after investigation, each was determined to be without merit.

Janowicz made the fifth accusation against Massaquoi at a meeting on June 15, 2015. Contrary to Harris Hill's policy, Janowicz took no statement from Massaquoi and terminated him immediately. After Massaquoi's termination, the New Hampshire Department of Health and Human Services ("DHHS") investigated

4

the fifth accusation and concluded it was "unfounded."  Despite this finding, Harris Hill did not offer Massaquoi reemployment.

In response to his termination, Massaquoi, acting pro se, filed an EEOC charge with the New Hampshire Commission for Human Rights ("NHCHR") under both Title VII and RSA 354-A on August 26, 2015.  The EEOC charge form includes a section with checkboxes for complainants to indicate the categories of discrimination they are challenging,[2] and a section for complainants to provide a written statement of their allegations.

Defendants point to two aspects of Massaquoi's EEOC charge material to their exhaustion argument.  First, Massaquoi did not check the boxes for either national origin discrimination or retaliation; he checked only the boxes for race and color discrimination.[3]  Second, although Massaquoi disclosed in his written statement that he was from Liberia, he alleged Harris Hill terminated him because of his race and color; he did not mention being terminated due to his national origin.

---

[2] The available bases of discrimination on the form are: race, color, sex, religion, national origin, retaliation, disability, genetic information, and "other."

[3] Massaquoi also checked the box for "other" but in his explanation next to that box he wrote only "NH State Statute, 354-A, et seq."

5

Massaquoi also alleges that defendants continued to take negative actions against him after Harris Hill terminated him. The first negative action involved Harris Hill. Specifically, Massaquoi alleges that, after he filed his EEOC charge, Janowicz wrote a letter to DHHS accusing him of attempting to rape a Harris Hill resident. Janowicz wrote this letter before completing an internal investigation. After she did fully investigate the accusation, Janowicz determined that it had no merit. The second negative action involved Genesis. Specifically, Massaquoi alleges that, at some point after Harris Hill terminated him, he sought and gained employment at another Genesis-affiliated facility, Laconia Rehabilitation. At Genesis's instruction, Laconia Rehabilitation terminated Massaquoi despite his satisfactory performance.

## DISCUSSION

Defendants argue that Massaquoi failed to exhaust his administrative remedies for his national origin discrimination and retaliation claims. Defendants assert this argument with respect to both the Title VII and RSA 354-A claims. The court applies Title VII standards to RSA 354-A claims "unless New Hampshire precedent or the statutory language of RSA 354-A warrant otherwise." Carney v. Town of Weare, No. 15-cv-291-LM, 2017 WL 680384, at *6 (D.N.H. Feb. 21, 2017) (applying Title VII

standard in analysis of exhaustion issue under RSA 354-A). As there is nothing in RSA 354-A or New Hampshire case law precluding a joint analysis, the court will address the state and federal claims together using the Title VII standard. See, e.g., id.

Under Title VII, a claimant may not bring suit in federal court until he "has first unsuccessfully pursued certain avenues of potential administrative relief." Love v. Pullman Co., 404 U.S. 522, 523 (1972). "Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009). "The requirement of administrative exhaustion serves to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Rodriguez v. United States, 852 F.3d 67, 78 (1st Cir. 2017) (internal quotations omitted). "That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). "Consequently, . . . in employment discrimination cases, the scope of the civil complaint is . . . limited by the charge filed with the EEOC[.]" Id. (internal quotations omitted).

7

"However, Title VII does not say explicitly that the court suit must be limited to just what was alleged in the agency complaint." Clockedile v. N.H. Dep't of Corrections, 245 F.3d 1, 4 (1st Cir. 2001). The First Circuit has noted that "an administrative charge is not a blueprint for the litigation to follow" and that "the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Fantini, 557 F.3d at 27 (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38-39 (1st Cir. 1990)). Therefore, the civil suit "may encompass acts of discrimination which the . . . investigation could reasonably be expected to uncover." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31-32 (1st Cir. 2009). Especially in cases where, as here, the employee filed the EEOC charge "pro se, the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable doubt . . . and an employee is not required to comprehensively set forth with literary exactitude all of the facts and theories upon which his or her claim is based." Lattimore, 99 F.3d at 464 (internal quotations omitted).

The court now applies these principals to determine whether Massaquoi exhausted his national origin and retaliation claims. For the reasons explained below, the court concludes that

Massaquoi has put forth enough at this early stage to show that he has properly exhausted both claims.

I. National Origin Discrimination

It is undisputed that Massaquoi failed to check the box for national origin discrimination or expressly state in his EEOC charge that the discrimination he suffered was the result of national origin discrimination. Defendants argue that this omission necessarily means that Massaquoi failed to exhaust his administrative remedies for that claim and it must therefore be dismissed. The court disagrees.

Viewed in a light most favorable to Massaquoi, it is likely that national origin discrimination would have fallen within the scope of a reasonable investigation into the race discrimination he alleged in his EEOC charge. The First Circuit has recognized that "race and national origin discrimination may present identical factual issues when a victim is born in a nation whose primary stock is one's own ethnic group" and that "in certain circumstances . . . national origin and race discrimination may overlap." Sinai v. New England Tel. and Tel. Co., 3 F.3d 471, 475 (1st Cir. 1993). In an analogous case, this correlation led the Second Circuit to hold that:

> [B]ecause racial categories may overlap significantly with nationality or ethnicity, the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be

> indiscernible . . . or at least sufficiently blurred
> so that courts may infer that both types of
> discrimination would fall within the reasonable scope
> of the ensuing EEOC investigation for exhaustion
> purposes.

[Deravin v. Kerik](), 335 F.3d 195, 202 (2d Cir. 2003) (internal quotations and citations omitted).

In his EEOC charge, Massaquoi stated that he is an African American, that he is originally from Liberia, and that he suffered from race discrimination at his place of employment. The connection between Massaquoi's race and Liberian origin creates a reasonable inference that the NHCHR, while investigating allegations of discrimination based on race, would have uncovered, to the extent it existed, evidence of discrimination based on Massaquoi's national origin. This generous inference is especially warranted here for two reasons. First, Massaquoi's disclosure of his Liberian origin in his EEOC charge would likely have alerted the NHCHR to probe this possibility from the start of its inquiry. Second, at the time of filing, Massaquoi acted without a lawyer. Accordingly, the court finds that, with respect to his national origin discrimination claim, Massaquoi has exhausted his administrative remedies.

B. Retaliation

Defendants also contend that Massaquoi, by not raising in his EEOC charge that Janowicz accused him of attempted rape, has failed to exhaust his administrative remedies for his retaliation claim. The First Circuit has held that a plaintiff may bring a retaliation claim not raised in an administrative charge if "the retaliation is reasonably related to and grows out of the discrimination complained of to the agency – e.g., the retaliation is for filing the agency complaint itself." Clockedile, 245 F.3d at 6.

Massaquoi alleges that Janowicz reported the attempted rape accusation to DHHS after he filed his EEOC charge. Construed favorably to Massaquoi, this is sufficient to meet the Clockedile test. Accordingly, the court finds Massaquoi has exhausted his administrative remedies for this claim at this early stage.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (doc. no. 16) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 28, 2018
cc: Counsel of Record

11